# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| Plaintiff-Appellee | § | **U.S.C.A. NO. 22-51055** |
| | § | |
| **V.** | § | |
| | § | |
| **HERACLIO DURAN-GONZALEZ** | § | |
| | § | **U.S.D.C. NO. 4:17-cr-00356-DC-3** |
| **Defendant-Appellant** | § | |
| | § | |

Appeal from the United States District Court
for the Western District of Texas, Pecos Division
Honorable David Counts, District Judge

_____

## BRIEF FOR APPELLANT

_____

**LAW OFFICES OF CHRISTOPHER McCAFFREY**
Christopher M. McCaffrey
State Bar No. 13336725
14277 Welch Road
Dallas, Texas 75244
Tel: (972) 448-3081
FAX: (972) 448-3081
Email: McCaffrey.Law.Office@gmail.com

ATTORNEY FOR APPELLANT

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | § | |
| **Plaintiff-Appellee** | § | **U.S.C.A. NO. 22-51055** |
| | § | |
| **V.** | § | |
| | § | |
| | § | |
| **HERACLIO DURAN-GONZALEZ** | § | |
| | § | **U.S.D.C. NO.  4:17-cr-00356-DC-3** |
| **Defendant-Appellant** | § | |
| | § | |

Appeal from the United States District Court
for the Western District of Texas, Pecos Division
Honorable David Counts, District Judge

_____

**CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons have an interest in the outcome of this case.  These representations are made in order that the Judges may evaluate possible disqualifications or recusal.

1.     Heraclio Duran-Gonzalez, Defendant-Appellant, #76901-051, FCI McDowell, Federal Correctional Institution, P.O. Box 1009, Welch, WV 24801

2.     Law Offices of Christopher M. McCaffrey, 14277 Welch Road, Dallas, Texas 75244.  Appellate Attorney for Defendant-Appellant.

3.     Mimi Smith, Law Office of Mimi Smith, P.O. Box 1032, 601 N. 7th Street, Alpine, Texas 79831-1032.  Trial Counsel for Defendant-Appellant.

4.     Monty W. Kimball, Assistant United States Attorney, U.S. Attorney's Office, Pecos/Alpine Division, 2500 North Highway 18, Suite A200, Alpine, Texas 79830.  Appellee trial counsel.

5.     Zachary C. Richter, Assistant United States Attorney, U.S. Department of Justice, 816 Congress Avenue, Suite 1000 Austin, Texas 78701. Appellee appellate counsel.

s/ Christopher M. McCaffrey_____
Christopher M. McCaffrey

ii

## STATEMENT REGARDING ORAL ARGUMENT

Appellant would urge to this Court that this case presents a novel and complex factual background which would benefit from oral argument and specifically requests that oral argument be granted in this case.

## TABLE OF CONTENTS

Page

Certificate of Interested Persons ................................................ ii

Statement Regarding Oral Argument .......................................... iii

Table of Contents ..................................................................... iv

Index of Authorities ................................................................. vi

Statement of Jurisdiction .......................................................... 1

Statement of Issues Presented for Review ................................... 2

Statement of the Case .............................................................. 3

Summary of Argument ............................................................. 14

Argument:

   **POINT OF ERROR NO. 1:  APPELLANT'S 2014 GUILTY PLEA SHOULD NOT BE USED TO ENHANCE HIS STATUS TO CAREER CRIMINAL BECAUSE THIS CONVICTION IS CONSTITUTIONALLY INVALID SINCE APPELLANT DID NOT HAVE A TRANSLATOR FOR HIS SENTENCING HEARING.** ........ 15

   **POINT OF ERROR NO. 2:  APPELLANT'S 2015 GUILTY PLEA SHOULD NOT BE USED TO ENHANCE HIS STATUS TO CAREER CRIMINAL BECAUSE THIS CONVICTION IS CONSTITUTIONALLY INVALID SINCE APPELLANT DID NOT HAVE A TRANSLATOR FOR HIS PLEA OR SENTENCING HEARING.** ........ 15

   **POINT OF ERROR NO. 3:  THE ACTIONS OF APPELLANT'S PRIOR ATTORNEYS IN PROCEEDING WITHOUT A QUALIFIED TRANSLATOR WAS INEFFECTIVE ASSISTANCE OF COUNSEL AND DID NOT CONSTITUTE A WAIVER**

**ON THE PART OF APPELLANT.**     21

**POINT OF ERROR NO. 4:  REMAND IS REQUIRED BECAUSE THE DISTRICT COURT DID NOT RULE ON THE VALIDITY OR INVALIDITY OF THE INCLUSION OF THESE PRIOR ADJUDICATIONS IN THE FACE OF APPELLANT'S OBJECTIONS.**     25

Conclusion     27

Certificate of Service     28

Certificate of Compliance     29

# INDEX OF AUTHORITIES

**Cases**                                                                                  **Page**

*Benson v. United States*, 332 F.2d 288 (5th Cir. 1964)                                        20

*Boykin v. Alabama*, 395 U.S. 238, 242 (1969)                                                  16

*Burgett v. Texas,* 389 U.S. 109, 115, 19 L. Ed. 2d 319, 88 S. Ct. 258
(1967)                                                                                         20

*Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013)                    22

*Custis v. United States,* 511 U.S. 485, 496-497, 128 L. Ed. 2d 517,
114 S. Ct. 1732 (1994)                                                                         20

*Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103
(1975)                                                                                         16

*Ferrell v. Estelle*, 568 F.2d 1128, 1132-33 (5th Cir. 1978)                                   16

*Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d
565 (2004)                                                                                     25

*Garcia v. Davis,* 2018 U.S.Dist. LEXIS 193380 (SD Tex. [Mcallen]
August 1, 2018)                                                                                24

*Gideon v. Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792
(1963)                                                                                         20

*Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 900-01 (E.D. Mich. 2001)                          23

*Gonzalez v. United States*, 553 U.S. 242, 246-48, 128 S. Ct. 1765,
170 L. Ed. 2d 616 (2008)                                                                      24,25

*In re Khan*, 184 Wn.2d 679, 363 P.3d 577, 582 (Wash. 2015)                                    23

*Ling v. State*, 288 Ga. 299, 702 S.E.2d 881, 883 n.1 (Ga. 2010)                              23

*Marchetti v. United States*, 390 U.S. 39, 88 S. Ct. 697, 19 L. Ed.

2d 889 (1968)      20

*Maryland v. Kulbicki*, 136 S. Ct. 2, 4, 193 L. Ed. 2d 1 (2015)      23

*McCarthy v. United States*, 394 U.S. 459, 466, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969)      16

*Mitchell v. United States*, 482 F.2d 289,297 (5th Cir. 1973)      26

*North Carolina v. Alford*, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970)      16

*Parke v. Raley*, 121 L. Ed. 2d 391, 113 S. Ct. 517, 525 (1992)      15

*Premo v. Moore*, 562 U.S. 115, 121, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011)      22,23

*Rushen v. Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983)      16

*Strickland v. Washington,* 466 U.S. 668, 687 (1984)      21,22,23

*United States v. Bourgeois*, 784 F.2d 718 (5th Cir. 1986)      21

*United States v. Canales*, 960 F.2d 1311 (5th Cir. 1992)      18,20,26

*United States v. Dickens,* 879 F.2d 410, 411-12 (8th Cir. 1989)      19

*United States v. Edwards,* 911 F.2d 1031, 1035 (5th Cir. 1990)      19

*United States v. Herrera-Quinones,* 2024 U.S. App. LEXIS 1926 (5th Cir. January 29, 2024)      18

*United States v. Howard, 991 F.2d 195, 199 (5th Cir.), cert. denied,* 510 U.S. 949, 114 S. Ct. 395, 126 L. Ed. 2d 343 (1993)      15,26

*United States v. Jones,* 907 F.2d 456 (4th Cir. 1990), *cert. denied,* 111 S. Ct. 683, 112 L. Ed. 2d 675 (1991)      19

*United States v. Kimler,* 167 F.3d 889, 893 (5th Cir. 1999)      22

*United States v. Mims,* 928 F.2d 310, 312 (9th Cir. 1991)     19

*United States v. Perez*, 445 F.2d 791, 792 (5th Cir. 1971)     20

*United States v. Perez*, 918 F.2d 488, 490 (5th Cir. 1990)     18

*U.S. v. Robles-Ramirez*, 93 F.Supp.2d 762, 764 (W.D. Tex. 2000)

*United States v. Tapia*, 631 F.2d 1207, 1210 (5thCir. 1980)     17

*United States* v. *Tucker,* 404 U.S. 443, 449, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972)     20

*United States v. Wildes,* 910 F.2d 1484, 1485 (7th Cir. 1990)     19

*Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993)     23

**Statutes**

18 U.S.C. §2     3

18 U.S.C. Section 3742(a)     1

21 U.S.C. §841(a)(1)     3

21 U.S.C. § 174     20

26 U.S.C. § 7237     20

28 U.S.C. Section 1291     1

28 U.S.C. §1827     17

28 USC §1827(c)(2)     17

28 U.S.C. § 1827(d)(1)(A)     18

U.S.S.G. § 4A1.2, comment. (n.6)       19

U.S.S.G. § 4A1.2, comment (n.6) (November 1989)       19

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
|     **Plaintiff-Appellee** | § | **U.S.C.A. NO. 22-51055** |
| | § | |
| **V.** | § | |
| | § | |
| **HERACLIO DURAN-GONZALEZ** | § | |
| | § | **U.S.D.C. NO.  4:17-cr-00356-DC-3** |
| **Defendant-Appellant** | § | |
| | § | |

## STATEMENT OF JURISDICTION

This is an appeal from a final judgment of the district court in a criminal

case.  The jurisdiction of this Court is invoked pursuant to 28 U.S.C. Section 1291

and 18 U.S.C. Section 3742(a).

1

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

**POINT OF ERROR NO. 1:  APPELLANT'S 2014 GUILTY PLEA SHOULD NOT BE USED TO ENHANCE HIS STATUS TO CAREER CRIMINAL BECAUSE THIS CONVICTION IS CONSTITUTIONALLY INVALID SINCE APPELLANT DID NOT HAVE A TRANSLATOR FOR HIS SENTENCING HEARING.**

**POINT OF ERROR NO. 2:  APPELLANT'S 2015 GUILTY PLEA SHOULD NOT BE USED TO ENHANCE HIS STATUS TO CAREER CRIMINAL BECAUSE THIS CONVICTION IS CONSTITUTIONALLY INVALID SINCE APPELLANT DID NOT HAVE A TRANSLATOR FOR HIS PLEA OR SENTENCING HEARING.**

**POINT OF ERROR NO. 3:  THE ACTIONS OF APPELLANT'S PRIOR ATTORNEYS IN PROCEEDING WITHOUT A QUALIFIED TRANSLATOR WAS INEFFECTIVE ASSISTANCE OF COUNSEL AND DID NOT CONSTITUTE A WAIVER ON THE PART OF APPELLANT.**

**POINT OF ERROR NO. 4:  REMAND IS REQUIRED BECAUSE THE DISTRICT COURT DID NOT RULE ON THE VALIDITY OR INVALIDITY OF THE INCLUSION OF THESE PRIOR ADJUDICATIONS IN THE FACE OF APPELLANT'S OBJECTIONS.**

## STATEMENT OF THE CASE

On December 12, 2017, Appellant was charged by Indictment with one count of a violation of 21 U.S.C. §841(a)(1) and 18 U.S.C. §2 alleging that he, with others, aiding and abetting one another, knowingly did possess with intent to distribute 50 kilograms or more, but less than 100 kilograms of marihuana, a controlled substance. (ROA.21-22)

He plead guilty on January 10, 2018.  At this hearing the Appellant had the services of a translator (Derek Taylor) who translated the proceedings and the documents to him in his native language, Tarahumara.  (ROA.154,158).  Even with the Tarahumara translation, there were instances where it was difficult for the Appellant to understand the proceedings:

> **THE COURT**: *Has anyone threatened you or forced you in any way to cause you to plead guilty today? Mr. Duran?*
>
> **THE DEFENDANT**: *Yes.*
>
> **THE COURT**: *Let me rephrase the question. Has anyone threatened you to cause you to plead guilty today?*
>
> **THE DEFENDANT**: *No.*
>
> (ROA.149)

After the plea hearing was completed, a Pre-Sentencing Report was prepared.  The PSR set his base offense level for aiding and abetting possession with intent to distribute 50 kilograms or more, but less than 100 kilograms of marijuana at 22.

He received a two point minor participant downward adjustment but was then enhanced as a career offender due to two prior guilty plea sentences in 2014 and 2015, bringing his offense level to 32. After the application of a three level reduction for acceptance of responsibility the total offense level was assessed at 29. (ROA.173) His Criminal History Score (mainly because of the inclusion of these two prior guilty pleas) was assessed at 7 points, and his guideline range was 151 to 188 months. (ROA.175,177) Appellant objected to these prior offenses being used to enhance his sentence both in a sentencing memorandum and at the sentencing hearing.

He was sentenced on June 18, 2018. At sentencing he also had the services of Derek Taylor to translate the proceedings into Tarahumara. Appellant plead for a downward variance and argued that the District Court should refrain from applying career offender status because Appellant did not have the benefit of a Tarahumara translator in the prior offenses used to enhance his sentence to a career offender status. Additionally, his status as a Tarahumara Indian in that culture makes it particularly difficult for him to understand the proceedings or interact in a meaningful manner. Counsel explained his unique isolated status in society and the difficulty in communication.

> *I draw this as an analogy to describe the powerlessness, not of all Tarahumarans, but Mr. Duran is of the group that stayed away from Mexican influence and Mexican culture. It was a very -- the isolation was intentional. It has been the survival of his people for centuries. So there's*

4

*no assimilation whatsoever into modern culture. He speaks a little Spanish but does not read or write.*
*He did not know how to write his name and the DEA formed characters for him to creating [sic] a signature. As it turns out, I'll go on, the correct spelling is without the "H".*
(ROA.158-59)

The first prior offense that was used to enhance Appellant's sentence was 2:14-CR-1655. He pled guilty to that offense and was sentenced to time served. He was represented by counsel and had the benefit of a Tarahumara translator at his plea hearing, which was nevertheless plagued by a marked inability to comprehend the proceeding. The following testimony illustrates the communication breakdown that recurred repeatedly in the plea hearing in this case, even with a Tarahumara translator.

> **THE COURT:** *Okay, sir. I need you to listen to the question and I need you to answer directly. Are you being treated for any type of physical or mental illness?*
>
> **THE DEFENDANT:** *No, I'm not. I don't drink.*
>
> **THE COURT:** *All right. Sir, did you understand the question I just asked you? I'm not asking you if you're drinking.*
>
> **THE DEFENDANT**: *Yes.*
>
> **THE COURT:** *I'm asking you do you have any sicknesses, sir?*
>
> **THE DEFENDANT**: *No.*
>
> **THE COURT:** *Is anyone -- I'm sorry.*
>
> **MR. SPEAKER:** *May I check his earphone?*

5

*THE COURT: Sure, sure.*

*MR. SPEAKER: Thank you, ma'am.*

*THE COURT: Thank you. Is anyone forcing you or threatening you to plead guilty?*

*THE DEFENDANT: Guilty.*

*THE COURT: Okay. I don't think he's understanding my questions.*

*THE INTERPRETER: The interpreter would be willing to rephrase it.*

*MS. MILNER: Can you please let him know to answer yes or no to her questions?*

*THE DEFENDANT: You mean like if someone ordered me to?*

*MS. MILNER: Can we possibly put this at the end of the calendar, Your Honor?*

*THE COURT: Would the interpreter be available say another half an hour?*

*THE INTERPRETER: I would be, Your Honor.*

*THE COURT: I apologize but we're not seeming to make any progress here.*

*THE INTERPRETER: Yes, Your Honor. The interpreter recognizes the difficulty with which the defendant understands the issues or how to respond.*
(ROA.451-52)

The hearing continues:

*THE COURT: Has anyone made any promises to get you 7 to plead guilty that's not in your plea agreement?*

*THE DEFENDANT: Yes.*

*MS. MILNER: Can we go to the interpreter?*

6

*(Pause)*

**THE INTERPRETER:** *The interpreter requests a rephase in the question.*

**THE COURT:** *Sure. Has anyone made any promises to get you to plead guilty that are not in your agreement?*

**THE DEFENDANT**: *Yes.*

**THE COURT:** *Can we ask him in Spanish again? All right. Has anyone made any promises that are not contained in your plea agreement?*

**THE DEFENDANT:** *That it was not written?*

**THE COURT**: *Right.*

**THE DEFENDANT**: *No.*
(ROA.461)

The plea hearing ended with Appellant's counsel giving her opinion that the hearing would not have been possible without the assistance of a Tarahumara translator.

**THE COURT:** *Ms. Milner, anything else?*

**MS. MILNER:** *Yes. Just for the record, Your Honor, prior to the hearing, we met with the interpreter, the Tarahumara interpreter. I don't think that without his interpretation he would have understood the legal concepts in the plea agreement. So yes –*

**THE COURT:** *It was a joint effort so –*

**MS. MILNER**: *Right.*

**THE COURT:** *Thank you, all.*
(ROA.464)

This case then proceeded to a sentencing hearing. Disturbingly, counsel for Appellant, despite the prior problems, waived his right to a Tarahumara translator in his sentencing with the following discussion. The record shows that the plea hearing almost was not successful due to problems in communication.. The Court was also surprised as can be seen:

> **THE COURT**: *So, will there be any need for a Tarahumara interpreter?*
>
> **MS. MILNER**: *No, there will not be, Your Honor. We needed one in order for him to enter his plea. With the help of the interpreter, he understood the legal concepts. We tried to plea him twice, and finally the second time it was successful. No. But I spoke with him, I read the report to him. He feels comfortable proceeding in Spanish.*
>
> **THE COURT**: *All right. Ms. Milner, I can accept your recommendations, but just so the record is clear, let me just ask Mr. Duran directly.*
>
> *Mr. Duran, the proceedings this morning are not held in your native Tarahumara language. We can proceed with the Spanish language only if you can tell me if you understand Spanish sufficiently in order to continue this morning.*
>
> **THE DEFENDANT**: *Yes.*
>
> **THE COURT**: *All right. Then that's the way we'll proceed.*
> (ROA.468-69)

This being a sentencing hearing which mainly consisted of discussion among the attorney's and the Court, except for Appellant's opportunity to speak on his own behalf, which was his right. Once again it is clear that he does not understand the question from the Court and is not capable of providing any testimony.

8

**THE COURT**: *All right. Mr. Duran, would you want to say anything at this time on your own behalf?*

**THE DEFENDANT**: *Well, thank you very much.*
(ROA.470)

Appellant appeared in Court again in docket number 2:15-CR-4410. Again, he pled guilty and he was sentenced to 27 months in that case. His plea was taken in front of the same magistrate as heard the testimony in the prior plea, witnessed the multiple communication issues, including the testimony that proceeding would have been impossible without Tarahumara translation. However, this plea was taken with no Tarahumara translator present and Magistrate Judge Garza made no inquiry whatsoever into the lack of a translator, counsel's opinion as to proceeding without a Taramuhara translator, and no inquiry of the Defendant as to whether he waived a translator. This plea was different functionally this time in that there were 2 Defendants who merely together answered "yes" to all questions and did not testify otherwise. This most likely accounts for the lack of confusion as Appellant merely parroted what his co-defendant stated.

Similarly, there was no discussion regarding this issue at sentencing, even though the judge at the 2015 sentencing hearing was the also same judge that made inquiry as to the absence of a Tarahumara translator for this defendant in 2014. Appellant's lawyer at that hearing stated that it was her belief that he believed that although Appellant had no formal education whatsoever and could neither read nor

9

write in Spanish, that he was somehow able to proceed in Spanish and did not need a Tarahumara translator.

> *And I just wanted to answer what I would anticipate would be the Court's concern, is to how this happens a second time. Mr. Duran is really a very naive person. He has no formal education. Spanish is his second language. He does speak it well enough to proceed in court. I checked that out early on, but Raramuri is his first language. He has a -- He's very unsophisticated, and he has a disposition of many Tarahumaras culturally, which is they're not aggressive, they're not -- and I only speak to this because I had an expert witness once on it, that he had studied the Tarahumara culture, and he explained to me that it is not -- it's simply not as confrontational, they are culturally less likely to stand up and say, "No, I don't want to do that." So, unfortunately, he's very easy to take advantage of.*
> (ROA.494)

It appears that in this case his counsel did not enlist the aid of a Tarahumara translator at all, leaving one to wonder, considering the obvious difficulties in the 2014 case, how counsel was able to communicate with her client to be able to represent him, discuss his case, render advice, and to represent to the Court that her client had waived his right to having the proceedings translated into Tarahumara, especially after she made great pains to describe how unsophisticated he was.  The Court, different from the 2014 case, did not inquire of the Defendant if he waived his right to a translator in his own language.

In advance of the sentencing hearing in the case currently on appeal Appellant filed a sentencing memorandum that argued in favor of a downward variance based on several considerations, including that

10

*Mr. Duran-Gonzalez never had anything translated or interpreted for him in a language which he understood. He had no interpreter for attorney-client conferences, nor at any stage of the prosecution, up through and including guilty plea, pre-sentence interview, sentencing, his right to appeal, and the notice of the terms of supervised release which he was forced to sign, although he could not, at the time, write his own name. No one explained the terms of supervised release to him in a language that he could understand.* (ROA.414)

Appellant's condition was eloquently described

*Among the many pieces of information which could not be conveyed by his attorney were: immigration consequences of his plea, the Government's offer(s), the consequences of the offer, and the possibility of a counter offer, negotiations, or trial. (Padilla). Mr. Duran was denied access to counsel because they could not confer, outside of the times that the Court scheduled hearings: re-arraignment and sentencing. Throughout the prosecution of the case, Mr. Duran could not describe to his defense counsel the circumstances which would give rise to substantial mitigation under USSG 5K2.12, Duress. They simply could not communicate outside of the times that they were at the courthouse, using the services of a bridge interpeting.*

*Mr. Duran speaks some Spanish. But, because he did not have even one day of school in Mexico, his Spanish is sparse and includes no abstractions, like guilt, innocence, immigration consequences, crime, sentencing, or supervised release. Nor does his Spanish afford him the ability to describe the mitigating circumstances surrounding the crime, nor describe his role in the offense, his understanding of the proceedings, the notion of a trial or of a contract. Mr. Duran could not grasp large units of time, such as weeks, months and years.*

*Mr. Duran never learned to read: he could not read nor write his own name. When arrested in the Western District of Texas, agents wrote Mr. Duran's first name, the way that DEA agents expected it to be spelled. They instructed Mr. Duran to copy the characters forming "Heraclio". This is the origin of the misspelling of his name. He was drawing the characters which agents drew for him, to "sign" his name. In the District of New Mexico, the Court learned of Mr. Eraclio's name from the Mexican*

11

*Consulate. The Mexican Consulate included a middle name "Modesto" which was also not Mr. Duran's name. It was not a name given him by his parents. It was a name given to him by a Protestant minister, in some Protestant or Catholic ritual in which a person takes on another name, like a confirmation name. Mr. Duran-Gonzalez rejects this name, which is relevant here to show how profoundly hampered Mr. Duran was in these proceedings. Until he received the services of properly interpreted court proceedings and attorney-client conferencing, in person, he was in the dark. This name confusion is a microcosm, a holon of the deficiency in Mr. Duran's prior conviction. Mr. Duran able to participate in his defense, standing up for the name his parents gave him at birth.*
(ROA.414-16)

The Government's response was simply that the Appellant had lawyers in the prior cases and had been speaking Spanish for 17 years.  (ROA.163)  This response does not consider that Appellant is from a community that does not speak Spanish, does not have many of the legal concepts that we take for granted in a modern society and language, and that in at least the 2015 case his attorney pretty much ignored that Appellant's native language was Tarahumara and he was not a proficient Spanish speaker.

The District Court in the case on appeal in ruling on Appellant's objection to the inclusion of these prior convictions, made no findings on the validity or invalidity of the inclusion of these convictions to set Appellant's sentencing level and career criminal status, and simply ruled that Appellant's motion for a downward variance was denied with no further explanation or specificity. (ROA.163)  The Court sentenced Appellant to 151 months based upon a sentencing level of 29 and a category of VI.  Had these prior offenses not been

incorporated he would have had a sentencing level of 17 and a category level of II,

which translates to a sentencing range of 27-33 months.

Appellant timely appealed.

## SUMMARY OF ARGUMENT

Appellant makes the following arguments in this appeal:

1.   Prior guilty plea adjudications from Appellant's 2014 and 2015 cases should not be counted in his criminal history and should not be used to enhance his status to career criminal because these prior adjudications were constitutionally invalid and violated due process.

2.   The lack of a translator undermined the voluntariness of Appellant's pleas in the prior cases because Appellant lacked the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense because though physically present in the courtroom .

3.   Appellant's attorney in the 2014 case did not request a translator in the sentencing hearing and his attorney in the 2015 case did not utilize a translator at any stage and these actions constituted deficient performance and ineffective assistance of counsel and Appellant did not effectively waive the right to the presence of a translator.

4.   Because Appellant timely objected to the inclusion of these prior convictions in his sentencing, the record must reflect a ruling from the District Court on the validity or invalidity of the inclusion of the prior convictions, which did not occur, and therefore a remand is required.

## ARGUMENT

**POINT OF ERROR NO. 1:  APPELLANT'S 2014 GUILTY PLEA SHOULD NOT BE USED TO ENHANCE HIS STATUS TO CAREER CRIMINAL BECAUSE THIS CONVICTION IS CONSTITUTIONALLY INVALID SINCE APPELLANT DID NOT HAVE A TRANSLATOR FOR HIS SENTENCING HEARING.**

**POINT OF ERROR NO. 2:  APPELLANT'S 2015 GUILTY PLEA SHOULD NOT BE USED TO ENHANCE HIS STATUS TO CAREER CRIMINAL BECAUSE THIS CONVICTION IS CONSTITUTIONALLY INVALID SINCE APPELLANT DID NOT HAVE A TRANSLATOR FOR HIS PLEA OR SENTENCING HEARING.**

**STANDARDS OF REVIEW:  Once the government establishes the fact of a prior conviction based upon a guilty plea, the defendant must prove the invalidity of the conviction by a preponderance of the evidence. *Parke v. Raley*, 121 L. Ed. 2d 391, 113 S. Ct. 517, 525 (1992).**

**Whether a prior conviction is covered under the sentencing guidelines is reviewed de novo, but factual matters concerning the prior conviction are reviewed for clear error.  *United States v. Howard, 991 F.2d 195, 199 (5th Cir.)*, cert. denied, 510 U.S. 949, 114 S. Ct. 395, 126 L. Ed. 2d 343 (1993).**

**The absence of a translator in the prior cases violated Due Process**

Well-established principles of due process bar trying a defendant, who "lacks the capacity to understand the nature and object of the proceedings against

15

him, to consult with counsel, and to assist in preparing his defense" because "though physically present in the courtroom, [he] is in reality afforded no opportunity to defend himself. . . . [This prohibition] is fundamental to an adversary system of justice." See *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975). The right to be meaningfully present at trial is critical to due process. *Rushen v. Spain*, 464 U.S. 114, 117, 104 S. Ct. 453, 78 L. Ed. 2d 267 (1983) ("Our cases recognize that the right to personal presence at all critical stages of the trial . . . [is a] fundamental right[] of each criminal defendant."). "The Constitution requires that a defendant sufficiently understand the proceedings against him to be able to assist in his own defense. Ensuring that the defendant has that minimum understanding is primarily the task of the trial judge." *Ferrell v. Estelle*, 568 F.2d 1128, 1132-33 (5th Cir. 1978), opinion withdrawn due to petitioner's death, 573 F.2d 867 (5th Cir. 1978).

It is beyond dispute that a guilty plea must be both knowing and voluntary. See, e.g., *Boykin v. Alabama*, 395 U.S. 238, 242 (1969); *McCarthy v. United States*, 394 U.S. 459, 466, 22 L. Ed. 2d 418, 89 S. Ct. 1166 (1969). "The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 27 L. Ed. 2d 162, 91 S. Ct. 160 (1970). That is so because a guilty plea constitutes a waiver of three

16

constitutional rights: the right to a jury trial, the right to confront one's accusers, and the privilege against self-incrimination. *Boykin*, 395 U.S. at 243

The Fifth Circuit has recognized that while there is no constitutional right as such to a Court-appointed interpreter in and of itself, the lack of an interpreter could nonetheless lead to the defendant being inhibited from such comprehension of the proceedings or the testimony given against him in English to such an extent as to have made the trial fundamentally unfair. *United States v. Tapia*, 631 F.2d 1207, 1210 (5thCir. 1980). The Fifth Circuit noted that "the basic inquiry on whether or not the failure to provide an interpreter was error still must be whether such failure made the trial fundamentally unfair." *Id*. (emphasis added).

The Court Interpreters Act, 28 U.S.C. §1827, provides a defendant who speaks only or primarily a language other than the English language a statutory right to a "court-appointed interpreter when [his] comprehension of the proceedings or ability to communicate with counsel is impaired." "The clerk of the court, or other court employee designated by the chief judge, shall be responsible for securing the services of certified interpreters and otherwise qualified interpreters required for proceedings initiated by the United States." 28 USC §1827(c)(2).

The Court Interpreters Act requires, in pertinent part, the appointment of an interpreter when a judge, either *sua sponte* or on the motion of a party, determines that

17

the defendant "speak[s] only or primarily a language other than the English language" and that fact would "inhibit such party's comprehension of the proceedings or communication with counsel or the presiding judicial officer." 28 U.S.C. § 1827(d)(1)(A). In other words, an interpreter should be appointed when the district court finds that the "defendant's ability to comprehend the proceedings or communicate with counsel is inhibited by language or hearing problems." *United States v. Perez*, 918 F.2d 488, 490 (5th Cir. 1990). The need for translation of the pretrial proceeding puts the district court on notice of the need to make inquiry regarding the defendant's language competency." *Perez*, 918 F.2d at 490 cited in *United States v. Herrera-Quinones,* 2024 U.S. App. LEXIS 1926 (5th Cir. January 29, 2024)

**Invalid convictions cannot be used for enhancement purposes.**

Appellant challenged the inclusion of the 2014 and 2015 adjudications to increase his criminal history score and to support the career criminal enhancement which was applied. It has also been held that improper convictions cannot be used to add to criminal history and can be challenged. In *United States v. Canales*, 960 F.2d 1311 (5th Cir. 1992) Appellant made timely objection.

The sentencing guidelines specifically address whether constitutionally invalid prior convictions may be considered in computing a defendant's criminal

history category. To determine the criminal history score of a defendant, the

sentencing guidelines instruct district courts that

> *Sentences resulting from convictions that have been reversed or vacated because of errors of law, or because of subsequently-discovered evidence exonerating the defendant, are not to be counted. Also, sentences resulting from convictions that a defendant shows to have been previously ruled constitutionally invalid are not to be counted.*
> U.S.S.G. § 4A1.2, comment. (n.6)

The background note to that same section explicitly reserves "for court

determination the issue of whether a defendant may collaterally attack at

sentencing a prior conviction." *Id.* Until the Commentary was amended, effective

November 1990, application note six stated that sentences should not be counted

from convictions "which the defendant shows to have been constitutionally

invalid." U.S.S.G. § 4A1.2, comment (n.6) (November 1989).

The Fifth and other Circuits have interpreted this previous version of the

Commentary as allowing defendants to challenge prior convictions in their federal

sentencing hearings. See *United States v. Edwards,* 911 F.2d 1031, 1035 (5th Cir.

1990); see also *United States v. Mims,* 928 F.2d 310, 312 (9th Cir. 1991); *United*

*States v. Wildes,* 910 F.2d 1484, 1485 (7th Cir. 1990); *United States v. Jones,* 907

F.2d 456 (4th Cir. 1990), *cert. denied,* 111 S. Ct. 683, 112 L. Ed. 2d 675

(1991); *United States v. Dickens,* 879 F.2d 410, 411-12 (8th Cir. 1989). Under this

body of case law, the burden of proving a conviction's constitutional invalidity

rested with the person challenging the conviction.  *United States v. Canales,* 960

19

F.2d 1311,1316 (5th Cir. 1992).

What makes a prior conviction invalid for enhancement purposes? It has been held many times that a court may not enhance with a prior sentence that was in violation of the 6th Amendment. The special status of *Gideon* v. *Wainwright,* 372 U.S. 335, 9 L. Ed. 2d 799, 83 S. Ct. 792 (1963) claims in this context is well established in our case law. See, *e.g., Custis* v. *United States,* 511 U.S. 485, 496-497, 128 L. Ed. 2d 517, 114 S. Ct. 1732 (1994); *United States* v. *Tucker,* 404 U.S. 443, 449, 30 L. Ed. 2d 592, 92 S. Ct. 589 (1972); *Burgett* v. *Texas,* 389 U.S. 109, 115, 19 L. Ed. 2d 319, 88 S. Ct. 258 (1967).

It has also been held that a Court cannot enhance where the prior conviction violated the 5th Amendment. The Supreme Court held in *Marchetti v. United States*, 390 U.S. 39, 88 S. Ct. 697, 19 L. Ed. 2d 889 (1968) that the privilege against self-incrimination is a complete defense to prosecution for violation of the wagering tax statutes. The sentence is vulnerable to attack on authority of the Fifth Circuit decision in *Benson v. United States*, 332 F.2d 288 (5th Cir. 1964) due to the invalidity of the prior conviction which was relied on for enhancement of sentence. In *United States v. Perez*, 445 F.2d 791, 792 (5th Cir. 1971) the 5th Circuit held that in the case of the reliance on an invalid prior conviction, the sentence of the appellant must be vacated and he is to be resentenced as a first offender in accordance with the provisions of 26 U.S.C. § 7237 and 21 U.S.C. § 174.

20

Other considerations have invalidated prior convictions for enhancement purposes. In *Bourgeois*, the 5th Circuit extended the rule to later use of convictions invalid on different grounds and found invalid a sentencing proceeding in which the trial court considered a conviction by a nonunanimous six-member jury. *United States v. Bourgeois*, 784 F.2d 718 (5th Cir. 1986) Appellant urges to this Court that the 2014 and 2015 convictions were invalid as the lack of a translator in those cases violates due process and should be excluded from consideration in setting Appellant's sentencing range and career criminal status.

**POINT OF ERROR NO. 3: THE ACTIONS OF APPELLANT'S PRIOR ATTORNEYS IN PROCEEDING WITHOUT A QUALIFIED TRANSLATOR WAS INEFFECTIVE ASSISTANCE OF COUNSEL AND DID NOT CONSTITUTE A WAIVER ON THE PART OF APPELLANT.**

**STANDARD OF REVIEW: To prevail on an ineffective assistance of counsel claim, an applicant must show "that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To show prejudice under *Strickland*, a petitioner must show a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different. Id. at 694. In deciding ineffective assistance of counsel claims, the reviewing court need not address both prongs**

**of *Strickland* but may dispose of such a claim based solely on a petitioner's failure to meet either prong of the test. *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).**

Appellant would urge to this Appellate Court that to proceed in the 2014 and 2015 hearing without a translator was blatant ineffective assistance of counsel. *Strickland v. Washington,* 466 U.S. 668, 687 (1984). To demonstrate deficient performance a "defendant must show that counsel's performance fell below an objective standard of reasonableness." *Id*. at 688. The Supreme Court stated that to establish deficient performance, a petitioner must identify acts that were "outside the wide range of professionally competent assistance." *Id*. at 689. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*.

Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Burt v. Titlow*, 571 U.S. 12, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013). The court will not second-guess strategic decisions or fault the attorney for deviations from best practices. *Premo v. Moore*, 562 U.S. 115, 121, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011). Rather, the court looks to whether the attorney was

22

incompetent under "prevailing professional norms." Id. Federal courts are to afford "both the state court and the defense attorney the benefit of the doubt." *Id*. at 13. The court should be highly deferential to strategic decisions. *Yohey v. Collins*, 985 F.2d 222, 228 (5th Cir. 1993). The reasonableness of counsel's conduct must be viewed as of the time of counsel's conduct. See *Maryland v. Kulbicki*, 136 S. Ct. 2, 4, 193 L. Ed. 2d 1 (2015). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

Few courts, both federal and state, have issued reasoned opinions on the issue of interpreter waiver through an ineffectiveness lens. See *Gonzalez v. Phillips*, 195 F. Supp. 2d 893, 900-01 (E.D. Mich. 2001) (finding that attorney's failure to request an interpreter constituted deficient performance and that confidence in the conviction was undermined)[emphasis mine]; *Ling v. State*, 288 Ga. 299, 702 S.E.2d 881, 883 n.1 (Ga. 2010) (finding that trial counsel's failure to secure an interpreter was not professionally reasonable when it was based on fear that use of the interpreter might cause the jury to grow impatient and speculative fear of juror bias against non-English speakers); *In re Khan*, 184 Wn.2d 679, 363 P.3d 577, 582 (Wash. 2015) (finding decision to not request an interpreter "is not a

23

meaningful strategy worthy of deference" but that the prejudice prong was still not met).

### Appellant Lacked Capacity to Waive Right to a Translator

It is anticipated that the Government will argue that Appellant waived the right to Tarahumara translation in the sentencing hearing in 2014 and both hearings in 2015. Any alleged waiver was insufficient to waive such a fundamental right under the facts in this case because any inquiry of Appellant as to whether he waived this right was conducted in Spanish, not Tarahumara. Whether the trial court spoke directly to Petitioner using a Tarahumara interpreter would ascertain whether Petitioner knew that the waiver was occurring. Even if Appellant was present and physically standing next to his attorney at the prior hearings, the Supreme Court has held that an Appeals Court cannot assume that Petitioner heard or understood the full ramifications of the waiver because he did not sufficiently understand Spanish. See *Gonzalez v. United States*, 553 U.S. 242, 246-48, 128 S. Ct. 1765, 170 L. Ed. 2d 616 (2008) (the petitioner required an interpreter and the Supreme Court could only assume that he "did not hear, or did not understand, the waiver discussions").

Without indication that an interpreter was present at the bench conference as well, Petitioner's mere physical presence at the bench conference has no significance. *Garcia v. Davis,* 2018 U.S.Dist. LEXIS 193380 (SD Tex. [Mcallen]

August 1, 2018)    Additionally, there is no mention of 2015 counsel, who was not the same as 2104 counsel, even made an inquiry in Appellant's native language as to whether Tarahumara translation was waived.  The use of an interpreter most likely falls among those "basic trial choices" which "are so important that an attorney must seek the client's consent in order to waive the right," yet would not require personal participation in the waiver. Gonzalez, 553 U.S. at 247-48. "Concerning [exercise or waiver of basic trial rights], an attorney must both consult with the defendant and obtain consent to the recommended course of action." *Florida v. Nixon*, 543 U.S. 175, 187, 125 S. Ct. 551, 160 L. Ed. 2d 565 (2004). Such examples include "whether to plead guilty, waive a jury, testify in his or her own behalf, or take an appeal." *Id*. An interpreter, key to the defendant's ability to understand the proceeding around him, is also appropriate for this category.

**POINT OF ERROR NO. 4:  REMAND IS REQUIRED BECAUSE THE DISTRICT COURT DID NOT RULE ON THE VALIDITY OR INVALIDITY OF THE INCLUSION OF THESE PRIOR ADJUDICATIONS IN THE FACE OF APPELLANT'S OBJECTIONS.**

**STANDARD OF REVIEW:  Whether a prior conviction is covered under the sentencing guidelines is reviewed <u>de novo</u>, but factual matters concerning the prior conviction are reviewed for clear error.  *United States v.***

*Howard, 991 F.2d 195, 199 (5th Cir.),* <u>cert. denied</u>, <u>510 U.S. 949</u>, <u>114 S. Ct. 395,</u> <u>126 L. Ed. 2d 343</u> (1993).

The absence of a ruling on the validity or invalidity of the prior convictions requires this Appeals Court to act. This Court has authority and duty to remand this case with instructions to not consider the 2014 and 2015 convictions in this sentence and recalculate the sentence after removing the effect of these convictions, which added 12 levels to Appellant's criminal history score, moved his criminal history category from II to VI, and categorized him as a career criminal. *Mitchell v. United States*, <u>482 F.2d 289,297</u> (5th Cir. 1973)   A second course of action is that this Court can remand the case to the District Court for a determination of the validity or invalidity of each of the two challenged prior convictions and if it determines one or more of them to be invalid, it should resentence appellant without considering the invalid conviction or convictions.

In *Canales*, the 5th Circuit required that in the face of a challenge that a prior conviction was invalid, the record <u>must reflect a ruling from the District Court</u> on the validity or invalidity of that prior ruling or remand was required. *United States v. Canales,* <u>960 F.2d 1311,1316</u>  (5th Cir. 1992)[emphasis mine](Because the record is unclear as to whether the district court entertained Canales's challenge to the prior conviction or felt precluded from determining such a challenge, we are

compelled to remand to the district court for further proceedings.)

The District Court in the case on appeal in ruling on Appellant's objection to the inclusion of these prior convictions, made no findings on the validity or invalidity of the inclusion of these convictions to set Appellant's sentencing level and career criminal status, and simply ruled that Appellant's motion for a downward variance was denied with no further explanation or specificity. (ROA.163)

## CONCLUSION

For the foregoing reasons, Appellant respectfully requests that this Court remand this case with instructions to not consider the 2014 and 2015 convictions in this sentence and recalculate the sentence after removing the effect of these convictions or to remand the case to the District Court for a determination of the validity or invalidity of each of the two challenged prior convictions and if it determines one or more of them to be invalid, it should resentence appellant without considering the invalid conviction or convictions.

Respectfully submitted,

**LAW OFFICES OF CHRISTOPHER McCAFFREY**

BY:   s/ Christopher M. McCaffrey_____
         Christopher M. McCaffrey

27

State Bar No. 13336725
14277 Welch Road
Dallas, Texas 75244
Tel:  (972) 448-3081
FAX:  (972) 448-3082

ATTORNEY FOR APPELLANT

## CERTIFICATE OF SERVICE

This is to certify that a true and correct copy of the foregoing instrument along with an electronic copy has been sent via ecf to Zachary C. Richter, Assistant United States Attorney, U.S. Department of Justice, 816 Congress Avenue, Suite 1000 Austin, Texas 78701 and to Heraclio Duran-Gonzalez, Defendant-Appellant, #76901-051, FCI McDowell, Federal Correctional Institution, P.O. Box 1009, Welch, WV 24801on this the 17th day of October, 2025.

s/ Christopher M. McCaffrey_____
Christopher M. McCaffrey

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to <u>5th Cir. R. 32.2.7(c)</u>, the undersigned certifies this brief complies with the type-volume limitations of <u>5th Cir. R. 32.2.7(b)</u>.

1.      Exclusive of the exempted portions in <u>5th Cir. R. 32.2.7(b)(3)</u>, the brief contains 7,380 words in proportionally spaced typeface.

2.      The brief has been prepared in proportionally spaced typeface using WordPerfect 8, Times New Roman, 14 pt.

3.      The undersigned understands a material misrepresentation in completing this certificate, or circumvention of the type-volume limits in <u>5th Cir. R. 32.2.7</u>, may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

s/ Christopher M. McCaffrey_____
Christopher M. McCaffrey